**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PARADISE MORGAN,

Plaintiff, Case No. 26-7561

- against -

**COMPLAINT**

ZEST LABS INC.,

Defendant.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Paradise Morgan ("Plaintiff" or "Morgan"), brings this action on behalf of herself against Zest Labs Inc. (hereinafter "Zest Labs" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Zest Labs for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Zest Labs provides to their non-disabled customers through http//:www.Takezest.com (hereinafter "Takezest.com" or "the website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Takezest.com provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Zest Labs. Yet, Takezest.com contains thousands of access barriers that make it difficult if not impossible for blind customers to use the website. In fact, the access barriers make it impossible for blind users to even complete a transaction on the website. Thus, Zest Labs excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with defendant's website and from purchasing goods or services from defendant's website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen

to rely on an exclusively visual interface. Zest Labs' sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Takezest.com.

8. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of the Wake Up Pill on TakeZest.com. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on Takezest.com.

11. Because Defendant's website, Takezest.com, is not equally accessible to blind consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Zest Labs' policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. §

12181 *et seq*., and 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant purposefully targets and otherwise solicits business from New York State residents through its website and sells its products through many retailers in this District. Because of this targeting, it is not unusual for Zest Labs to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website. In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of

Massachusetts].” *Otter Prods*., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here.” *Otter Prods*., 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant “availed itself of the forum state’s economic activities by targeting the residents of the Commonwealth . . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum.” *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

**PARTIES**

16. Plaintiff, is and has been at all relevant times a resident of New York County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, Paradise Morgan, cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods and services of Takezest.com as a result of accessibility barriers on Takezest.com.

18. Defendant, Zest Labs Inc., is a Delaware foreign business corporation doing business in New York State with a principal place of business located at 104 E. 36th Street, New York, NY 10016.

19. Zest Labs Inc. provides to the public a website known as TakeZest.com which provides consumers with access to an array of goods and services, including, the ability to view and learn about delayed-release caffeine pills, which can be purchased with the click of a mouse, and learn about promotions, among other features. Consumers across the United States use

Defendant's website to find and purchase Defendant's products. Defendant's website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017).

**NATURE OF THE CASE**

20. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

22. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

23. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS," and Nonvisual Desktop Access, otherwise known as "NVDA," (jointly hereinafter as "screen readers") are currently the most popular, separately purchased and downloaded screen-reading software programs available for blind computer users.

24. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content

Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

25. Defendant controls and operates Takezest.com. in New York State and throughout the United States.

26. TakeZest.com is a commercial website that offers products and services for online sale. The online store allows the user to view and learn about the delayed-release caffeine pills offered for sale, make purchases, and perform a variety of other functions.

27. Among the features offered by Takezest.com are the following:

(a) Consumers may use the website to connect with Zest Labs on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase delayed-release caffeine pills for delivery to their doorstep; and

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, and learning about promotions.

28. This case arises out of Zest Labs' policy and practice of denying the blind access to the goods and services offered by Takezest.com. Due to Zest Labs' failure and refusal to remove access barriers to Takezest.com, blind individuals have been and are being denied equal access to Zest Labs, as well as to the numerous goods, services and benefits offered to the public through Takezest.com.

29. Zest Labs denies the blind access to goods, services and information made available through Takezest.com by preventing them from freely navigating Takezest.com.

30. Takezest.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

31. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Takezest.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to

a blind computer user). As a result, Plaintiff and blind Takezest.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

32. TakeZest.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as TakeZest.com, these forms include search fields to locate products, fields to select quantity and frequency of delivery, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

33. On Takezest.com, Plaintiff is not able to complete a transaction. Specifically, Plaintiff, using her screen readers, she experienced the following problems when attempting to make a purchase on the Website:

**PROMOTIONAL POP-UP WINDOW:**
Plaintiff was unable to access the "Win Mystery Gifts" promotion. When first visiting the website, sighted visitors are greeted with a pop-up window which offers them a promotional discount or gift if they sign up by entering their email into text boxes. However, for Plaintiff and other blind screen reader users, focus does not move into the promotional pop-up window and they do not know it even exists. Consequently, Plaintiff and other blind visitors to the website cannot take advantage of "sighted only" promotions.

**NAVIGATION**:
There is **NO** 'Skip to Content' link. Consequently, accessing individual products was virtually impossible and at best, significantly time-consuming and burdensome.

Plaintiff was unable to access the submenu that can be activated when a mouse hovers over the 'Learn' link as it is **NOT** announced. This link is announced only as "learn link," so it is **UNCLEAR** that a submenu exists.

Plaintiff was unable to access the images of text. For example, when Plaintiff navigated to the images of text in the gallery for the 'Wake Up Pill' on the home page, these were announced only as "graphics." **NONE** of the content visible on the images is announced. This includes the 'Supplement Facts' image.

On the home page, after the 'Subscribe and Save' radio button is announced for the 'Wake Up Pill' product, the next key press results in the announcement of "unlabeled zero button" as the whole page content shifts to the left. The focus indicator then appears over a blank space on the right side of the screen (which represents the 'Close' button for a dialog that is **NOT** visible until the user scrolls down with a mouse). Plaintiff did **NOT** know where focus has moved to on the page or that new dialog content is available. The next key press then moves focus back to the 'Order Now' button for the 'Wake Up Pill' product, but the content remains shifted on the page, so it is **NO** longer visible as it was before. This is a critical error.

Plaintiff was unable to access the arrow button used to submit the email address in the footer as it is **NOT** labeled. It is announced only as "unlabeled 1 button," so Plaintiff did **NOT** know its purpose.

Some content on this site is **ONLY** accessible to mouse users and could **NOT** be accessed by Plaintiff. For example, the 'It's not magic, it's science' section on the 'Science' page requires a mouse to scroll through the content. With arrow key navigation, only the first tab of content is accessible. With a mouse, scrolling down automatically moves focus through the remaining tabs and their content.

The 'In-Vitro Caffeine Release Profile' graph on the 'Science' page **CANNOT** be interpreted with the screen reader. The graph labels and color key are announced with arrow key navigation, but the actual colored lines in the graph are **NOT** announced or described, so Plaintiff could **NOT** interpret or benefit from the data shown in this graph.

Plaintiff was unable to access the Clinical Study. When the 'View Clinical Study' button is selected on the product page, a pop-up is displayed, but it is **NOT** announced or given focus. Instead, focus resumes on the underlying page for a few more key presses, and then focus moves to the 'Close' button for the pop-up, which is **NOT** labeled. The 'Close' button is announced only as "unlabeled zero button," so Plaintiff did **NOT** know that she has encountered the related pop-up.

Plaintiff was unable to access the Supplement Label. Similarly, when the 'View Supplement Label' button is selected on the product page, a pop-up is displayed with the label, but it is **NOT** announced or given focus. Instead, the user must press the tab key a few more times before focus moves to the 'Close' button on the pop-up, which is announced only as "unlabeled zero button." Plaintiff did **NOT** know that she has encountered the pop-up. If a user happens to move focus to the label with the arrow keys, it is then announced only as "supplement label graphic." **NONE** of the supplement facts on the label are announced.

Plaintiff was unable to access the graph in the 'Wake up, and take off' section of the product page. When navigating, focus moves to the labels across the top and bottom of the graph, but there is **NO** announcement or description of what the graph is actually showing.

Plaintiff was unable to access the ‘Instant morning energy, without the afternoon crash’ chart. When navigating, moves focus only through the row headers and then continues down the page. **NONE** of the column headers or checkmarks come into focus, so Plaintiff did **NOT** know what the chart is showing.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**
Plaintiff was unable to make a one-time purchase. The ‘Subscribe and Save’ option is the only one available, and it is pre-selected on the product page. However, once the user navigates to this pre-selected button, they **CANNOT** navigate below it to read the supportive text.

After the ‘Subscribe and Save’ button is announced on the product page, the next key press then results in the announcement of “unlabeled zero button,” while the focus indicator disappears from the page. This seems to be related to the ‘More Info’ button, like on the home page, but pressing the enter key after this announcement does **NOTHING**. Therefore, **ONLY** mouse users can access the ‘More Info’ button.

**CHECKOUT PROCESS:**
The ‘Discount code’ input field does **NOT** receive focus until after the ‘Pay Now’ button and additional links (Terms of Service, Privacy Policy, etc.) which usually signify the end of a page. It is **UNLIKELY** that a screen reader user would complete the required checkout fields and then continue tabbing past the ‘Pay Now’ button and multiple footer links to find this field on the page.

Consequently, Plaintiff was essentially prevented from completing a transaction on the Website.

34. Furthermore, Takezest.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different “hot spots” which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various “hot spots.” The image maps on Takezest.com’s menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a purchase, she was unable to access it completely.

35. Furthermore, Plaintiff is unable to locate the shopping cart because the shopping cart form does not specify the purpose of the cart. As a result, blind customers are

denied access to the shopping cart. Consequently, Plaintiff was unsuccessful in adding products into her shopping cart and are essentially prevented from purchasing items on Takezest.com.

36. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through Takezest.com even more time consuming and confusing for Plaintiff and blind consumers.

37. Takezest.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, Takezest.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on Takezest.com.

38. Due to Takezest.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if Takezest.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service. Thus, Takezest.com's inaccessible design, which requires

the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on Takezest.com.

39. Takezest.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Takezest.com and who would otherwise be able to fully and equally enjoy the benefits and services of Takezest.com in New York State and throughout the United States.

40. Plaintiff has made numerous attempts to complete a purchase on takezest.com, most recently on August 14, 2026; August 27, 2026; and September 1, 2026, but was unable to do so independently because of the many access barriers on Defendant’s website. These access barriers have caused TakeZest.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the Wake Up Pill on Defendant’s website. Moreover, if Defendant removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about and purchase additional delayed-release caffeine pills for delivery to her doorstep. For a blind person, it can be especially difficult to get restful, uninterrupted sleep due to stress, irregular sleep cycles, and heightened sensitivity to environmental noise. Because of this, Plaintiff wakes up every morning feeling groggy and lethargic. She has been searching for the best way to wake up feeling more refreshed and ready to conquer the day. There are no solutions to this problem in physical stores besides coffee and energy drinks, which often result in jitters and subsequent crashes by the middle of the day. Additionally, there are challenges that Plaintiff faces by shopping in physical stores. For Plaintiff, as a blind person, traveling to stores and navigating aisles is difficult, and once there, the choices can be confusing. As a result, Plaintiff prefers to shop online. Like most blind people, Plaintiff relies on social media for product recommendations. While on her social media feeds,

Plaintiff came across Defendant's brand. She loved that Defendant's products are easy to take, easy to manage, and they would solve her exact problem; they would give her alertness and clarity as soon as she wakes up. Defendant's products are designed to have consumers feel the positive effects of caffeine as soon as they wake up in the morning by taking a pill the night before. Plaintiff also loved that Defendant's product eliminates the problems associated with caffeinated beverages because Defendant's product slowly releases caffeine into the system, which prevents jitters and crashes. As such, Plaintiff was eager to purchase products directly from Defendant's website, as purchasing directly from the website ensures product authenticity, along with exclusive deals, bundles, and helpful information about Defendant's product and improving energy and alertness. Unfortunately, Defendant's website was not accessible and continues to be inaccessible to the blind, thereby deterring Plaintiff from completing her purchase. If Defendant's website were accessible to the blind and Plaintiff were not deterred from making a purchase on the website, Plaintiff would have to return to replenish her supply of delayed-release caffeine pills, as she intends to consume them daily. Furthermore, Plaintiff wishes to return to the website to read articles and research about delayed caffeine release, which are periodically released on Defendant's website. Plaintiff would also like explore future products as they are released. Plaintiff would like to return to the website to purchase the 'Travel Pack.' Plaintiff has purchased supplements on other (accessible) websites, but Defendant's brand stands out for its quality and its unique technology that is not sold by other vendors. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7

2021)). Determining whether a website accessibility complaint properly allege whether plaintiff lives in “close proximity” to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff’s home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during October and September, 2025 without success and will definitely make purchases of additional products, including the new products that are regularly added to the website, amongst many other products which are sold on the website and which currently cannot be purchased by blind persons.

41. As described above, Plaintiff has actual knowledge of the fact that Defendant’s website, Takezest.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

42. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Takezest.com.

43. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

44. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

45. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Takezest.com, Plaintiff suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

**FIRST CAUSE OF ACTION**

(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

46. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though set forth at length herein.

47. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

48. Takezest.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

49. Defendant is subject to Title III of the ADA because it owns and operates Takezest.com.

50. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

51. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

55. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Zest Labs who are blind have been denied full and equal access to Takezest.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

56. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

57. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Takezest.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

58. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

58. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Declaratory Relief)

62. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 61 of this Complaint as though set forth at length herein.

63. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Takezest.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Takezest.com, which Zest Labs owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*. prohibiting discrimination against the blind.

64. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Takezest.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Takezest.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Takezest.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*.;

d) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
September 3, 2026

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*__________
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com